David M. Friedman
Howard W. Schub
Jeffrey R. Gleit
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel for Petitioning Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re                                                      : Chapter 7
                                                           :
CIL LIMITED,                                               : Case No. 13-11272 (JMP)
                                                           :
                    Debtor.                                :
                                                           :
---------------------------------------------------------- x

**REPLY TO RESPONSE OF CIL LIMITED TO PETITIONING CREDITORS' MOTION FOR EXPEDITED DETERMINATION OF THE INVOLUNTARY PETITION OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF AN INTERIM TRUSTEE**

Cyrus Opportunities Master Fund II, Ltd., Cyrus Select Opportunities Master Fund Ltd., and Cyrus Europe Master Fund Ltd. (the "Petitioning Creditors"), by their undersigned counsel, hereby file this reply (the "Reply") to the *Response Of CIL Limited To Petitioning Creditors' Motion For Expedited Determination Of The Involuntary Petition Or, In The Alternative, For Appointment Of An Interim Trustee* (the "Response") [Docket No. 12], and respectfully represent as follows:

## PRELIMINARY STATEMENT

CIL, through a law firm that represented it in connection with the very transaction challenged by the Petitioning Creditors – and a lawyer at that firm based in New York and Boston – has made a "special appearance" to respond to the Motion.[1] Notably, the Response contains virtually no evidentiary submissions and seeks no relief -- not even denial of the Motion. It is primarily an unsworn and undocumented recitation of alleged facts.

While it is not clear what is sought by the Response, one can at least glean what is not in dispute, and that is the merits of the Involuntary Petition. CIL does not challenge that the Petitioning Creditors have standing, that they have claims that meet the statutory threshold, and that CIL is generally not paying its debts as they become due. Indeed, this latter requirement is acknowledged in the *Order Appointing the Joint Provisional Liquidators*, which was recently entered by the Grand Court of the Cayman Islands (the "Cayman Court").

CIL attempts to allege certain facts that a Court would consider in determining jurisdiction over the Debtor. For example, while admitting that the Debtor has no employees and only two directors, one of whom (Gareth Turner) resides and conducts business in New York,

---

[1] Capitalized terms used but not defined herein shall have the meanings assigned to them in the *Petitioning Creditors' Motion For Expedited Determination Of The Involuntary Petition Or, In The Alternative, For Appointment Of An Interim Trustee* (the "Motion") and its exhibits. Submitted herewith in support of the Motion is the Supplemental Declaration of Howard W. Schub, dated April 30, 2013 ("Supplemental Schub Decl.").

CIL goes on to say that Mr. Turner "conducts no business on behalf of CIL *from that office or from any other locations*." Response at ¶ 4 (emphasis added). This statement, apart from not being attested to by Mr. Turner, is facially preposterous. CIL does not and cannot explain how one of the Debtor's two directors "conducts no business on behalf of CIL." And, indeed, CIL neglects to provide the Court with a copy of Mr. Turner's affidavit from the sealed Cayman proceedings (although it refers liberally to other materials that Petitioning Creditors were informed to be confidential) which was signed and notarized in Manhattan. Other feeble attempts to evade jurisdiction are discussed below.

CIL also attempts to suggest (without asking) that the Court abstain in favor of the Cayman proceeding. As discussed below, abstention is an extraordinary remedy, which has been held to be available only when both the Debtor and the majority of its creditors seek such relief – a fact not present here. Moreover, abstention is unavailable because: (i) the Cayman case is in its infancy; (ii) the Debtor does no business and has no assets or staff in Cayman; (iii) the Cayman Court addressed the Involuntary Petition this past Friday and the JPL's did not seek, and the Court did not direct them, to oppose the Motion; and (iv) the Cayman Islands does not appear to have jurisdiction over numerous parties that will be held to account for the damage inflicted upon the Debtor.

Finally, CIL attempts to justify the Exchange Offer on the grounds that: (i) CEVA is insolvent; and (ii) CEVA is agreeing to give CIL a good deal on an intercompany claim that CEVA would otherwise dispute. The Court is not being asked at this juncture to determine whether CEVA is insolvent. While the Petitioning Creditors dispute that conclusion and, with the assistance of Moelis & Co., ("Moelis"), a highly respected financial advisory firm, have identified numerous potential errors in the E&Y valuation report that could be indicative of

3

substantial equity value owned by the Debtor, the solvency issue will be determined in connection with litigation that will likely be brought by a Chapter 7 trustee. But two facts are undisputed: (1) CIL, run by its Apollo-affiliated directors, voluntarily agreed to forfeit its entire equity stake in CEVA for no consideration and without any independent oversight, in order to facilitate a transaction in which Apollo retained an interest and benefitted from a low valuation; and (2) the so-called "deal" on the contested intercompany claim is entirely fictitious: CIL and CEVA have reported the existence of that claim in CEVA's public filings for years without ever indicating any "dispute."

The facts plainly cry out for a Chapter 7 trustee. Given the extremely limited opposition contained in the Response and, critically, *the fact that CIL does not oppose expedition,* the Petitioning Creditors suggest that the Court grant the first prong of the Motion – expedited consideration of the Involuntary Petition – and set that for hearing within 10 days (with discovery on any jurisdictional facts proceeding over the next week). Granting the Involuntary Petition will result in the immediate appointment of a trustee and, if determined expeditiously, will serve judicial economy by obviating the need for the appointment of a trustee on an interim basis.

**REPLY**

**I. The Motion Should Be Granted.**

    **A. CIL Does Not Contest The Elements Of The Involuntary Petition.**

    1. In the Motion, the Petitioning Creditors – long term holders of the PIK Notes – demonstrated that they satisfied their section 303(b) burden. CIL admits they hold approximately 40% of the €103 million outstanding under the PIK Notes.[2] Moreover, other

---

[2] While CIL states in the Response that it has 15 creditors, in its filing in the Cayman Proceeding, it states that it has 9 creditors. Thus, only one petitioning creditor may be needed pursuant to section 303(b) of the Bankruptcy

4

funds managed by Cyrus also hold PIK Notes, which bring the aggregate holdings of the Cyrus-managed entities to approximately 66% of the outstanding PIK Notes.

2. The Petitioning Creditors' claims are not subject to a bona fide dispute because, as CIL acknowledges, its debts to Petitioning Creditors under the PIK Agreement became accelerated and immediately due and owing upon commencement of the Cayman Insolvency Proceeding. Indeed, the *Order for Appointment of Provisional Liquidators* entered by the Cayman Court specifically states that CIL "is or is likely to become unable to pay its debts" as they become due. Ricotta Decl., Ex. A at ¶ 1.

3. Thus, the Petitioning Creditors undeniably meet the requirements of section 303(b) of the Bankruptcy Code. The only issues nominally raised by CIL are: (i) jurisdiction; (ii) abstention; and (iii) the merits of the Exchange Offer. As shown below, none of CIL's assertions have merit, and are not raised by any competent evidence.

### B. This Court Has Jurisdiction Over The Debtor.

4. This Court has jurisdiction over the Debtor pursuant to section 109(a) of the Bankruptcy Code because Gareth Turner, one of the Debtor's two directors, conducts the Debtor's business and maintains documents of the Debtor in New York. In its Response, the Debtor admits that Mr. Turner currently maintains an office and residence in New York City.[3] The Debtor tries to cloud the jurisdiction issue by asserting that the chairman of meetings of the board of directors is "typically" Mark Beith. However, if Mark Beith is "typically" conducting meetings of the board, then it follows that Mr. Turner conducts the remainder of the meetings since the Debtor only has two directors.

---

Code. *See* 11 U.S.C. § 303(b)(2). Submitted herewith in support of the Motion is the Supplemental Declaration of Howard W. Schub, dated April 30, 2013 ("Supplemental Schub Decl.").

[3] See Response at ¶ 9.

5

5. Further, the Debtor's statement that Mr. Turner "conducts no business on behalf of [the Debtor] from [his New York office] or from any other locations" is belied by the facts. Mr. Turner's affidavit from the sealed Cayman Insolvency Proceeding was signed and notarized in New York City. Moreover, Mr. Turner executed his affidavit in his capacity as a director of CIL.

6. The Debtor also asserts that its counsel, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C. ("Mintz Levin") does not act as "custodian" for any of CIL's corporate records. This assertion is of no consequence because: (i) the legal standard under section 109(a) is whether estate assets, including legal files are located in the United States, not whether a law firm serves as a "custodian" of records; and (ii) Mintz Levin represents the Debtor in connection with the Exchange Offer out of New York, and as such, Mintz Levin is in possession of relevant transactional documents.

7. In addition, the Debtor's jurisdictional assertions fail in light of the Debtor's specific business activities in New York. These activities include, but are not limited to: (i) in May 2012, the Debtor filed for a $400 million initial public offering (the "IPO") with the United States Securities and Exchange Commission (the "SEC") stating its intent to list the offering on the New York Stock Exchange (the Debtor withdrew its offering on April 2, 2013);[4] (ii) in February 2012, the Debtor issued over €850 million of new equity securities to the New York-based Apollo in exchange for the contribution and subsequent cancellation of €523 million of CEVA debt and €355 million of CIL securities previously held by Apollo and its affiliates;[5] (iii) in February 2012, the Debtor and CEVA Group Plc completed a debt and equity funded

---

[4] Schub Decl., Exs. F and G.

[5] Schub Decl., Ex. A at 11.

financing through the issuance of $325 million of Additional First Lien Senior Secured Notes and $620 million of Senior Unsecured Notes;[6] and (iv) the Debtor and its subsidiaries engaged Wachtell Lipton and Fried Frank in New York to represent the companies in connection with CIL's IPO.[7] Indeed, when the Petitioning Creditors reached out to Apollo after the announcement of the Exchange Offer, they were advised that any negotiations regarding CIL should be held with an Apollo executive in New York. The Response fails to address any of these facts.

8. Applying these facts to applicable case law, which CIL completely ignores, it is clear that this Court has jurisdiction over CIL. For example, in *In re Paper I Partners, L.P.*, 283 B.R. 661, 674 (Bankr. S.D.N.Y. 2002), Judge Gerber held that the jurisdictional requirement of section 109 of the Bankruptcy Code was met when the debtors were managed by a general partner which maintained a place of business in New York and the debtors were parties to communications and engaged in acts with respect to the business of the debtors from the New York office of its general partner. 283 B.R. 661, 670 (Bankr. S.D.N.Y. 2002); *see also In re Petition of Brierley*, 145 B.R. 151, 161-62 (Bankr. S.D.N.Y. 1992) (finding jurisdiction over a debtor based in England, where the debtor's accountant, who was an independent contractor with no telephone number listed in the debtor's name, maintained books and records regarding the debtor in her New York office). In reaching its holding, the *Paper I* Court held that the jurisdictional requirement of section 109 of the Bankruptcy Code is met as long as the debtor has *"a"* place of business in the United States, and a principal place of business is not required. *In re Paper I*, 238 B.R. at 673. Additionally, the Court held that the requirements of section 109 of the Bankruptcy Code were met because the Debtors maintained business files in New York. *Id.*

---

[6] *Id.*

[7] Schub Decl., Ex. F at 1.

7

at 674. Under these cases, the test for jurisdiction is easily met here. CIL did not, because it could not, cite any authority to the contrary.

        **C.**      **Abstention Is Not Warranted.**

9. Not surprisingly, CIL also cites no support for its suggestion that the Court abstain from exercising its jurisdiction. Abstention is an extraordinary remedy that will be granted only when both a debtor and its creditors would be better served by dismissal. *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) ("The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that *both creditors and* the debtor would be better served by a dismissal.") (emphasis added). Indeed, "[g]ranting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of both the debtor *and its creditors must be served* by granting the requested relief." *Id.* (citations omitted) (emphasis added). "The decision to abstain under § 305(a)(1) should be made on a case-by-case basis," and "[t]he moving party bears the burden to demonstrate that the interests of the debtor and its creditors would benefit from dismissal or suspension of proceedings under § 305(a)(1)." *Id.* at 462-463, 464 (internal citations omitted).

10. Abstention motions that do not serve the interests of creditors have been denied notwithstanding the pendency of foreign proceedings. In *RHTC Liquidating Co. v. Union Pac. R.R. Co. (In re RHTC Liquidating Co.)*, 424 B.R. 714 (Bankr. W.D. Pa. 2010), for example, the bankruptcy court refused to abstain from hearing an involuntary chapter 7 petition even though the alleged debtor was already subject to a Canadian insolvency proceeding. *See Id.* at 717, 729. In refusing to abstain, the court explained:

> The Court starts with a presumption that [petitioning] creditors

> have made a studied decision that their interests are best served by pursuing the involuntary Chapter 7 case in this Court rather than simply acquiescing in what happens in the Canadian Proceeding. Furthermore, the Petitioning Creditors have expressed a number of reasons for this conclusion, including a fear that their interests are not being sufficiently protected in the Canadian Proceeding, differences between Canadian and United States bankruptcy law that are detrimental to them, the existence of insufficiently explained post-petition asset transfers . . . which have occurred during the pendency of the Canadian Proceeding, and, the failure of the [Canadian insolvency] Monitor to aggressively pursue possible claims against [Canadian debtor] or insiders that could benefit the . . . U.S. bankruptcy estate. The Petitioning Creditors contend that the continuance of the present case and the appointment of a Chapter 7 trustee is the best remedy for these problems.

*Id.* at 721. *See also In re Monitor Single Lift*, 381 B.R. at 470, 471 (lack of progress in debtor's Cayman Islands insolvency proceeding weighed against abstention or dismissal; "the Debtors have offered sound arguments why this chapter 11 case better protect[s] [debtor's] contractual rights, and therefore the rights of [the debtor's] creditors as a whole, than could proceedings in . . . the Cayman Islands . . .").

11. The Debtor cannot argue here that abstention would serve the interests of CIL's creditors – at least two-thirds of whom favor the Involuntary Case. Indeed, the JPL's did not seek authorization to oppose the Involuntary Petition at the April 26, 2013 hearing before the Cayman Court. The April 26 Order entered in the Cayman Court permits only CIL, and not the JPL's, to oppose the Involuntary Petition. *Cf. RHTC Liquidating*, 424 B.R. at 720 (monitor of Canadian insolvency proceeding sought abstention).

12. Moreover, like the Cayman Islands proceeding in *Monitor Single Lift*, as to which the court denied abstention, there has been no activity in the Cayman Insolvency Proceeding here. The Cayman Insolvency Proceeding was commenced less than a month ago, and no progress of any kind in furtherance of CIL's liquidation has yet been made. Critically, the

9

Debtor has no business operations, witnesses, personnel in the Cayman Islands or funds to pay the JPL's and their professionals, and the Debtor articulates no reason why that forum offers any advantage or convenience that might benefit the CIL estate.

13. The Debtor also offers no analysis or explanation as to how the Cayman Court could assert jurisdiction over Apollo, CEVA, or other critical parties, or what remedies might be available to CIL's creditors in the Cayman Islands. Accordingly, the Debtor has failed to bear any aspect of its burden to demonstrate that CIL's creditors would be best served by abstention in deference to proceeding with CIL's liquidation in the Cayman Islands.

### D. The Exchange Offer Is An Insider Deal With A Flawed Process Which Warrants The Appointment Of An Interim Trustee.

14. In its Response, CIL concedes that no independent party has analyzed the Exchange Offer. As a result, CIL goes to great lengths to show that the Exchange Offer and other restructuring transactions were the result of good faith and arm's length transaction. The uncontroverted facts demonstrate otherwise.

15. First, although CIL is purportedly represented by its own separate counsel and advisors, it is ultimately controlled by Apollo. Apollo directors agreed to forfeit CIL's equity in CEVA for no consideration in a transaction that allowed them to re-enter as the controlling shareholder through its exchange of CEVA debt. Simply hiring separate advisors cannot cleanse such blatant self-dealing. Similarly, the last minute removal of Mr. Turner from CEVA's board of directors does not sanitize the otherwise conflicted transactions.[8]

---

[8] As of September 2012, Mr. Turner was a director of CEVA but was removed prior to the circulation of the Bondholders Report. *See* Schub Decl., Ex. A, Annex C (Unaudited 2012 Consolidated Financial Statements at 46).

16. <u>Second</u>, the valuation report (the "E&Y Report") issued by Ernst & Young Ltd.,[9] upon which CIL claims to have relied in agreeing to the Exchange Offer, is seriously flawed. The E&Y Report does not constitute an independent full investigation, but relies instead on opinions of and discussions with Houlihan Lokey, an advisor engaged by CEVA, whose creditors would benefit from a low valuation.[10]

17. The E&Y Report also employs unreliable CEVA financial projections. The projections were not prepared in the ordinary course of business, but rather were prepared at the direction of Apollo in connection with the restructuring.

18. As indicated above, prior to filing the Involuntary Petition, the Petitioning Creditors retained Moelis to analyze E&Y's valuation. Moelis identified several apparent mistakes and errors in judgment in its report – including a mistaken assumption of total debt and an artificially high cost of capital -- which, if corrected, could indicate hundreds of millions of dollars of equity value in CEVA for the CIL estate.

19. <u>Third</u>, CIL unsuccessfully attempts to present the settlement and allowance (at a discount) of the otherwise "disputed" Intercompany Claim as a win for CIL's creditors. Yet, at no time prior to the release of the Bondholder Report did CEVA dispute the validity of the Intercompany Claim.[11] In fact, CEVA, in several of its public filings going back to 2008, and as

---

[9] According to E&Y LLP's letter to the Board of Directors, dated March 28, 2013 from E&Y's New York Office at "5 Times Square, New York, 10030," CIL retained E&Y, LLP in New York to perform the valuation and E&Y Cayman relied on that valuation in issuing its report to CIL. *See* Ricotta Decl. Ex. D, at pgs. 3 and 12 of 59.

[10] *See* E&Y Report (acknowledging that E&Y relied on historical and projected financial information prepared by CEVA management, with assistance from Houlihan Lokey (CEVA's financial advisor), and did not independently verify the information received); E&Y's letter to the board dated March 28, 2013 (same).

[11] *See* Schub Decl., Ex. A ("CEVA vigorously disputed and continues to dispute [CEVA Group Plc's payable to CIL] …. CEVA does not believe CIL has any property right in the cash held in the cash pools, nor any right to withdraw amounts from such cash pools.").

11

recently as September 2012, acknowledges that the Intercompany Claim is valid with no mention of any dispute.[12]

20. The Exchange Offer and other restructuring transaction cries out for independent investigation and recovery for the benefit of CIL creditors. A disinterested Chapter 7 trustee is essential to examine the Exchange Offer and the Debtor's other dealings with Apollo to adequately protect CIL and its stakeholders.

## CONCLUSION

For the above reasons and the reasons set forth in the Motion, the Petitioning Creditors respectfully request that this Court enter an order granting the Motion and expediting a hearing on the Involuntary Petition such that it is heard within the next 10 days, and granting such other and further relief as is just, proper and equitable.

Dated: April 30, 2013
      New York, New York

By: /s/ David M. Friedman
David M. Friedman (dfriedman@kasowitz.com)
Howard W. Schub (hschub@kasowitz.com)
Jeffrey R. Gleit (jgleit@kasowitz.com)
KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

*Counsel for Petitioning Creditors*

---

[12] *See, e.g.*, Supplemental Schub Decl., Ex. J ("At 30 September 2012 CEVA Group Plc has a payable to CEVA Investments Limited, amounting to €13 million (31 December 2011: €13 million). This relates to intercompany cash pooling arrangements and is included within trade and other payables in the Consolidated Balance Sheet."); *see also* Supplemental Schub Decl., Exs. K-T (Describing the nature and amount of the intercompany claims.)